IN THE UNITED STATES DISTIRCT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GENEVIEVE D. LOPEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:06-CV-109 |
| TMS | |
| ) | |
| LOWER KUSKOKWIM ) | |
| SCHOOL DISTRICT, and ) | |
| GARY FREDERICK, ) | |
| ) | |
| Defendants. ) | |

## AFFIDAVIT

STATE OF NEW MEXICO        )
                           ) ss
COUNTY OF __Taos__         )

GENEVIEVE D. LOPEZ, being duly sworn, hereby states the following:

1. My name is Genevieve D. Lopez and I am the Plaintiff in the above styled action.

2. On May 13, 2004, an intruder entered into my residence and sexually assaulted me. At the time of this attack I was asleep in my room.

3. At that time, I was renting my residence in Quinhagak, Alaska from Defendant Lower Kuskokwim School District.

4. The front entrance of the residence had an arctic entryway, with both an inner and an outer door. There were various locks installed on both of those doors, and before going to bed on the night I was assaulted I had securely locked all of those locks.

5. The exterior back door to the residence had two locks installed on it: a locking doorknob and a deadbolt type lock.

6. Before going to bed on the night I was assaulted I had locked the exterior back door using both the deadbolt lock and the locking doorknob.

7. There was not an arctic entry at the back door to the residence. Rather, the laundry room for the residence was the first room just inside the exterior back door.

8. There was also a door between the laundry room and the adjoining kitchen, the next room as you continued into the house from the back. When I first moved into this residence there was a locking doorknob on this door between the laundry room and the kitchen.

9. Before I was assaulted, there had been other incidents where other homes in Quinhagak that were rented to other teachers had been broken into. As a result of those other break-ins, Defendants had installed additional locks on some of the doors in my residence. One of those was the installation of a hasp on which a padlock could be placed on the interior or kitchen side of the interior door between my laundry room and the kitchen.

10. Before going to bed the night I was assaulted, I had been using the laundry room to do my laundry. When I was done with my laundry, I do not remember replacing the padlock on the hasp on this interior door between my kitchen and laundry room.

11. I had always been concerned about locking a padlock on the door between the kitchen and laundry room due to my fear that someone in the house might not be able to unlock it in the event of a fire or other emergency that would require a quick exit from the residence.

12. After I was assaulted, I immediately called the police, and when the police arrived I spoke with various officers concerning the events.

13. I told the police that I had locked all of the locks on the exterior doors of the house. I remember saying that I always locked both locks on the exterior back door before going to bed and that I had done so on that day as well. I did not say that I had forgotten to lock either the deadbolt type lock or the doorknob lock on the exterior back door to my residence. I also told the officers that I had locked the doorknob on the interior door between the kitchen and the laundry room.

14. After I was assaulted, I observed the intruder leaving through the kitchen doorway. I realized that if I had placed a padlock on the hasp on that doorway and locked it, the intruder would not have been able to exit the residence in the manner he did.

15. I did advise the police officers that I remembered that I had not placed a padlock on the hasp that was installed on the interior door, and I pointed to the hasp on the interior door between the kitchen and laundry room to show them the hasp that had not been padlocked that night. I believe that I may have referred to this hasp as a "deadbolt" when I was speaking with the officers.

16. At the time I was speaking with the officers I did not know how the intruder had entered my residence. I assumed, perhaps

incorrectly, that since the intruder left my residence through the back door he must have also come in that same way.

17. I do not recall any police officer checking the windows of the residence that night or any discussion about whether the entry could have been made through a window.

FURTHER AFFIANT SAYETH NAUGHT

_____
GENEVIEVE LOPEZ

Subscribed and sworn to before me this 18th day of September 2006.

NOTARY PUBLIC
STATE OF
NEW MEXICO
GENEVIEVE MARTINEZ
My Commission Expires Dec 27, 2009

_____
Notary Public

My commission expires December 27, 2009