**G.   *Association Report Regarding 05 plan***

The Association may annually report to the Board in writing regarding site program improvements suggested by teachers and approved by the Association that were not incorporated into a site's 05 plan.

# ARTICLE VI - TRANSFERS AND ASSIGNMENT

A. **Voluntary Transfers**

    1.    a.    District teachers will be given first consideration on the basis of their experience, employment history, qualifications and length of service with the District to transfer to any teacher position within the District which at the end of the school year is vacant for the next school year.

           b.    District teachers who have applications or transfers on file with the District shall automatically receive consideration for transfer to a position that becomes vacant during the school year if at least one-half the school year remains, and be so advised.

    2.    a.    In anticipation of positions coming vacant, teachers desiring transfers may leave a written application stating this at the District Office prior to openings becoming available and such teachers will be considered automatically without further action on their part.

           b.    The District shall post notice of vacancies or new position announcements as they become known for the last half of the current year and for the subsequent school year at each site.

    3.    A teacher who leaves such written application at the District Office pursuant to paragraph 2 above, shall be required to inform the District that he/she wishes to withdraw such written application. If the District accepts the teacher's request for voluntary transfer based upon an application submitted pursuant to paragraph 2 above, prior to receiving written notice of the withdrawal of said application, such transfer shall be effected and shall be deemed "voluntary."

    4.    In the event that more than one teacher applies for a vacancy under the provisions of this Section B, consideration for the vacancy will be given to District applicants in the order of their length of service with the District. If District applicant(s) is (are) rejected for the vacancy and the District employs a new teacher, each District applicant shall be notified in writing of the reason or reasons he/she was not selected with reference specifically to the criteria of consideration set forth in Section A-1a above.

    5.    In the exercise of its discretion to select from among applicants for a vacancy, the District shall do so by a consistent and non-discriminatory application of the criteria of consideration set forth in Section A-1a above.

B. **Involuntary Transfers**

1. District Initiated Transfers for Program or Enrollment Reasons

   The Association recognizes that the fulfillment of the Board's legal responsibilities and duties may necessitate involuntary transfers. However, the District shall not arbitrarily or capriciously invoke an involuntary transfer.

2. District Initiated Transfers During the School Year for Community Generated Reasons

   The Association recognizes that on occasion situations develop in a community whereby the effectiveness of a teacher is severely impaired as a result of animosity between the teacher(s) and a member(s) of the community. In such situations, after good faith efforts to resolve the disputes have failed, the teacher may be involuntarily transferred to another site.

3. Conditions Applying to Involuntary Transfers

   a. Notice of an involuntary transfer shall normally be given no later than April 15. However, that date may be exceeded only in the event of unforeseen circumstances for which there is no reasonable alternative. Provided, however, that the teacher must advise the Superintendent of any reasonable alternative of which he/she is aware.

   b. An involuntary transfer will be made by the District only after a consultation has occurred between the teacher and the Superintendent. The teacher shall receive written reasons for the transfer.

   c. All reasonable moving expenses related to the involuntary transfer shall be borne by the District.

   d. No teacher couple shall be separated through an involuntary transfer.

   e. If a teacher is involuntarily transferred, he/she may terminate his/her individual contract without penalty or liability with two (2) weeks of the written notification of any such involuntary transfer or the teacher may elect to be placed on a one-year leave of absence. If the written notification given pursuant to paragraph 3.a. above does not set forth a school location, the two (2) weeks shall not begin to run until the teacher is given written notification of the new school location.

   f. In place of the Article XIX grievance procedure, the following expedited grievance procedure shall be used if an involuntary transfer is grieved.
   A written grievance must be delivered to the Superintendent within three (3) working days of receipt of the notice of an involuntary transfer. The

Superintendent shall hold the equivalent of a Level II grievance hearing within five (5) working days of receipt of the written grievance. The Superintendent shall issue a written decision no later than three (3) days after the end of the hearing.

If the Superintendent decides to uphold the involuntary transfer/deny the grievance, expedited binding arbitration will take place provided the grievant notifies the Superintendent in writing of an appeal to arbitration within three (3) days after receiving the written decision of the Superintendent.

Representatives of the District and the Association will meet in January of each year and agree to a list of arbitrators. Each arbitrator on the list must agree to hold a hearing, if necessary, in Bethel prior to May 9th and to issue a decision within six (6) days after the end of the hearing. The parties will select an arbitrator from the list by either mutual agreement or by the strike method. Unless delays in the process are attributable to the district, the involuntary transfer shall occur even if an arbitrators decision has not been rendered prior to the effective date of the involuntary transfer.

### C.  *Issuance of Individual Teacher Contracts*

1. Individual teacher contracts for tenured teachers shall be issued by the Board on or before March 30. Individual teacher contracts for non-tenured teachers shall be issued by the Board on or before the last day of the school term.

2. Individual teacher contracts shall be returned to the Superintendent within thirty (30) days of receipt of such contract or the offer of employment shall be null and void. If the teacher contract is returned by mail, it must be postmarked within the thirty (30) day period set forth above.

3. Individual teacher contracts shall include all provisions required by Alaska Statutes and Department of Education Regulations.

4. a.  The individual teacher contracts will provide for school location. and levels of instruction, i.e., K-8 and 7-12. However, in the event of unforeseeable circumstances allowing for an involuntary transfer pursuant to paragraph B.3.a. above, and further in the event reassignment is necessary to balance class loads due to a decrease in enrollment at a school location, such reassignment or transfer may occur subsequent to April 15. Additionally, the levels of instruction set forth in the individual teacher's contract may be changed if instructional program needs mandate such a change.

      b.      For an individual teacher contract to be issued with the location left open the provisions of Section B of this Article must be followed, the teacher must be returning from a long term leave of absence, or the teacher is a new hire.

5.      A teacher may resign without prejudice or penalty if such resignation occurs prior to April 1.

**D.**    *Transfer of Districts*

1.      In the event a District site(s) withdraws from the District to form an independent school district, the teachers assigned to the site shall, upon request and consistent with A.S. 14.20.147, be given consideration for any vacant position with the District in accordance with the voluntary transfer provisions of this Article. Such a right shall extend from the date of the withdrawal of the site from the District to the first day of the first school year that the withdrawn site(s) operates independently of the District. Also, this provision shall apply to any teacher(s) RIF'ed by the withdrawing district during its first year of operation.

2.      Teachers assigned to the withdrawing site will not be involuntarily transferred by the District from that site between the date of the election to withdraw and the date the new district begins operation (effective date of the withdrawal).

      A teacher who is assigned to a withdrawing site for fifty (50) percent or more of his/her contract time shall be considered at that site for purposes of Section D.

# ARTICLE VII - TEACHER EVALUATION

The Board shall adopt a teacher evaluation system in accordance with the requirements of AS 14.20.149 and supporting regulations.

# ARTICLE VIII - PERSONNEL FILES

A. Permanent Personnel (201) files shall be maintained in the District administrative office. A teacher's personnel file shall be available for inspection by the teacher or his/her designee by appointment. No material in the file shall be copied and disseminated for other than District administrative use without the prior written approval of the teacher. Upon request, a teacher shall be provided copies of his/her 201 file at duplicating cost.

B. Material which is derogatory to a teacher's conduct, service, character, or personality shall not be placed in his/her file unless the teacher has had an opportunity to read and respond to the material. Any such response shall become part of his/her permanent personnel file.

C. Unofficial unit files may be kept in individual schools. Such files are available for inspection by the teacher upon appointment. Material which is derogatory to a teacher's conduct, service, character, or personality shall not be placed in a teacher's unit file.

D. Information entered in a 201 file which is later proven through the grievance procedure to be false will be removed. However, for the purpose of this specific section, a teacher may not grieve the validity of the professional judgment made by a supervisor in the preparation of a written evaluation.

# ARTICLE IX - TEACHER RIGHTS

A. **Academic Freedom**

1. In accordance with prescribed District curriculum, teachers are free to present instructional materials which are pertinent to the subject and level taught. Teachers shall also be entitled to freedom of discussion within the classroom on all matters which are relevant to the subject matter under study if all facts concerning controversial issues are presented in a scholarly manner and all discussions are pedagogically justifiable. This Article does not limit the right of the Board to establish and modify District curriculum in accordance with its policies governing the same.

2. It is recognized that academic freedom is subject to such parameters as established by law, Department of Education Regulations, and the Code of Ethics of the Professional Teaching Practices Commission.

B. **Protection from Assault and Vandalism**

Any employment related criminal conduct directed against a teacher or a teacher's family shall be reported by the teacher to the Board or its designated representative. The Board shall render all reasonable assistance to the teacher including but not limited to reporting the criminal conduct to law enforcement and other appropriate governmental agencies. Administrative leave may be granted to testify or seek medical attention.

C. **Personal Freedom**

In accordance with A.S. 14.20.095, the Board and the Association recognize the rights of a teacher to engage in comment and criticism outside school hours, regarding school personnel, members of the governing body of any school or school district, any other public official, or any school teacher, to the same extent that any private individual may exercise the right.

D. **Student Discipline**

1. The Board recognizes the concern of teachers that students who violate the District's Student Discipline Code may not be disciplined in an appropriate and timely fashion in accordance with Board policy. Therefore, the Board will review, in a timely manner, documented allegations that appropriate and timely

     disciplining of students is not occurring and will, in its discretion, take appropriate action.

2.    Site administrators will meet with teachers at each site annually to review building disciplinary standards and procedures.

### E. Teacher Protection

The Board recognizes that teachers want to know if students in their class(es) have previously acted in a manner which would lead a teacher or administrator to reasonably believe that the student is a danger to himself/herself, to other students, or to staff. Therefore, to the extent allowed by law, and consistent with the privacy rights of students and their parent(s)/guardian(s)/custodian(s), the District will make reasonable efforts to notify teachers of known, timely, and documented information that a student in their class(es) has acted in the manner described above.

### F. Telephone Provided

Each building containing classroom(s) shall have a telephone with an outside line.

LKEA/LKSD 7/1/02-6/30/05
18
EXHIBIT 1
Page 23 of 56

# ARTICLE X - EMPLOYMENT PRACTICES

A. *Notice of Non-Retention*

All tenured teachers shall be automatically rehired if not notified of non-retention prior to March 16. Non-tenured teacher hired prior to the start of the 1996-97 school year shall be automatically rehired if not notified of non-retention on or before April 15. Non-tenured teachers hired after the start of the 1996-97 school year shall be automatically rehired if not notified of non-retention on or before the last day of the school term.

B. *Discipline*

For all disciplinary matters not covered in Section C-1,2, and 3 of this Article, no teacher will be disciplined without just cause. In addition, involuntary transfers are not covered by this section.

C. *Suspension, Dismissal, Non-Retention*

Suspension, dismissal, and non-retention actions shall be in accordance with A.S. 14.20.175 and 14.20.180. For the purposes of providing reference to those statutory provisions, they are set forth below in their entirety. However, the incorporation into this Negotiated Agreement of those statutory provisions is not intended to, nor does it afford to the teachers rights in addition to those contained in those statutory provisions, such as rights to grieve actions taken pursuant to those statutes.

1. Dismissal (A.S. 14.20.170)

    a. A teacher, including a teacher who has acquired tenure rights, may be dismissed at any time for only the following causes:

        1) incompetency, which is defined as the inability or the unintentional or intentional failure to perform the teacher's customary teaching duties in a satisfactory manner;

        2) immorality, which is defined as the commission of an act which, under the laws of the State, constitutes a crime involving moral turpitude;

        3) substantial noncompliance with the School Laws of the State, the Regulations or Bylaws of the Department, the Bylaws of the District, or the written rules of the Superintendent.

    b.    A teacher may be suspended temporarily with regular compensation during a period of investigation to determine whether or not cause exists for the issuance of a notification of dismissal according to A.S. 14.20.180.

    c.    A teacher who was dismissed under this section is not entitled to a plan of improvement under AS 14.20.149.

2.    Non-Retention (A.S. 14.20.175)

    a.    A teacher who has not acquired tenure rights is subject to non-retention for the school year following the expiration of his/her contract for any cause which the employer determines to be adequate. However, at his/her request, the teacher is entitled to a written statement of the cause of his/her non-retention. The boards of city and borough school districts and regional educational attendance areas shall provide by regulation or bylaw a procedure under which a non-retained teacher may at his/her request, be heard informally by the Board.

    b.    A teacher who has acquired tenure rights is subject to non-retention for the following school year for only the following causes:

        1)    The school district demonstrates that (A) the district has fully complied with the requirements of AS 14.20.149 with respect to the tenured teacher; (B) the teacher's performance, after completion of the plan of improvement, failed to meet the performance objectives set out in the plan; and (C) the evaluation of the teacher established that the teacher does not meet the district performance standards;

        2)    immorality, which is defined as the commission of an act which, under the laws of the Sate, constitutes a crime involving moral turpitude;

        3)    substantial noncompliance with the School Laws of the State, the Regulations or Bylaws of the Department, the Bylaws of the District, or the written rules of the Superintendent.

3.    Procedures upon Notice of Dismissal or Non-Retention (AS 14.20.180)

    a.    Before a teacher is dismissed, the employer shall give the teacher written notice of the proposed dismissal and a pretermination hearing. A pretermination hearing under this section must comport with the minimum requirements of due process, including an explanation of the employer's evidence and basis for the proposed dismissal and an opportunity for the

teacher to respond. If, following a pretermination hearing, an employer determines that dismissal is appropriate, the employer shall provide written notice, including a statement of cause and a complete bill of particulars, of the decision. The dismissal is effective when the notice is delivered to the teacher.

b. An employer that has decided to nonretain a tenured teacher shall provide the teacher with written notice, including a statement of cause and a complete bill of particulars. The notice must comply with AS 14.20.140(a).

c. Within 15 days after receipt of a decision of dismissal under (a) of this section or nonretention under (b) of this section, a teacher may notify the employer in writing that the teacher is requesting a hearing before the school board under (d) of this section or that the teacher is invoking the grievance procedures under (e) of this section.

d. Upon receipt of a request for a hearing, the employer shall immediately schedule a hearing and notify the teacher in writing of the date, time, and place of the hearing. The teacher may elect to have either a public or a private hearing, and to have the hearing under oath or affirmation. The parties have a right to be represented by counsel and to cross-examine witnesses. The teacher has the right to subpoena a person who has made statements that are used as a basis for the employer's decision to dismiss or nonretain. A written transcript, tape or similar recording of the proceedings shall be kept. A copy of the recording shall be furnished to the teacher, for cost, upon request of the teacher. A decision of the school board requires a majority vote of the membership, by roll call. The board's decision shall be in writing and must contain specific findings of fact and conclusions of law. A copy of the decision shall be furnished to the teacher within 10 days after the date of the decision. If the school board sustains the dismissal or nonretention, the teacher may appeal the decision to the superior court for judicial review based on the administrative record.

e. Upon receipt of a notice invoking the grievance procedures, the school board shall immediately schedule an informal hearing and notify the teacher in writing of the date, time, and place of the hearing. The hearing is for the purpose of reviewing the statement of cause and bill of particulars and not for the purpose of taking evidence. The teacher may choose whether the informal hearing is held in public or in private. A decision of the school board requires a majority vote of the membership, by roll call. The board's decision shall be in writing. The board shall promptly furnish a copy of the decision to the teacher. If the board sustains the dismissal or nonretention, the teacher may, within 15 days

after receipt of the decision, give written notice to the school board and submit the matter to arbitration under the rules of the American Arbitration Association. The decision of the arbitrator is final and binding on the school board, the teacher, and the bargaining organization representing the teacher, if any. If the school board and the teacher agree, they may waive the informal hearing under this subsection and submit the matter directly to arbitration.

4. Non-Tenured Teacher Procedure Upon Notice of Non-Retention

A non-tenured teacher who is non-retained may request an informal hearing before the Board. Such request shall be in writing within fifteen (15) working days of receipt of the written notice of non-retention. The informal hearing shall be held by the Board within thirty (30) days of receipt of the request for an informal hearing. The informal hearing will be held in the teacher's assigned village, unless the parties mutually agree to a different hearing location.

The informal hearing may be open or closed at the teacher's request. The teacher may be represented by counsel and may present and examine witnesses for the purpose of contesting the non-retention. Such witnesses shall be sworn. The teacher may examine witnesses presented by the District, if any. The teacher shall advise the District in his/her request for an informal hearing if he/she will be represented by counsel and the names of any witnesses he/she plans to present at the informal hearing. A written transcript, tape, or similar recording of the proceedings shall be kept. Transcribed copies shall be furnished to the teacher for cost upon his/her request. The vote shall be taken by roll call. Written notice of the Board's decision shall be furnished to the teacher within ten (10) days of the date of the informal hearing and shall include the basis for the decision.

5. Notification and Due Process

No data shall be used in any adverse personnel action against a teacher unless the teacher has been notified of the matter in a timely manner and given a reasonable opportunity to improve where practicable and/or appropriate.

# ARTICLE XI - REDUCTION IN FORCE

In implementing a layoff plan pursuant to AS 14.20.177, set forth below, the District, for legitimate program reasons, may give priority consideration to Alaska Native teachers as long as such consideration is consistent with Alaska law and Title VII of the 1964 Civil Rights Act.

**§. 14.20.177. Reductions in force.** (a) A school district may implement a layoff plan under this section if it is necessary for the district to reduce the number of tenured teachers because
    (1) school attendance in the district has decreased; or
    (2) the basic need of the school district determined under AS 14.17.021(b) and adjusted under AS 14.17.225(b) decreases by three percent or more from the previous year.
    (b) Before a school district lays off any tenured teacher, the school board shall adopt a layoff plan. The plan must identify academic and other programs that the district intends to maintain in implementing the layoff plan. The plan must also include procedures for layoff and recall of tenured teachers consistent with this section.
    (c) Except as provided in this subsection, a school district may place a tenured teacher on layoff status only after the district has given notice of nonretention to all nontenured teachers. However, a school district may retain a nontenured teacher and place on layoff status a tenured teacher if there is no tenured teacher in the district who is qualified to replace a nontenured teacher. The school district shall comply with the notice requirements set out in AS 14.20.140 in placing a tenured or nontenured teacher on layoff status.
    (d) For purposes of this section, a tenured teacher is considered qualified for a position if the position is in
    (1) grades K-8 and the teacher has an elementary endorsement;
    (2) an established middle school and the teacher has
    (A) an elementary endorsement
    (B) a middle school endorsement; or
    (C) a secondary certificate with a subject area endorsement in the area of assignment in which the teacher filling the position will spend at least 40 percent of the teacher's time or the teacher has, within the five years immediately preceding the last date on which the teacher performed teaching services in the district before being laid off, received an evaluation stating that the teacher's performance in the subject or subjects meets the district performance standards; or
    (3) grades 9 – 12 and the teacher has an endorsement for each subject area in which the teacher filling the position will spend at least 40 percent of the teacher's time or the teacher has, within the five years immediately preceding the last date on which the teacher performed teaching services in the district before being laid off, received an evaluation stating that the teacher's performance in the subject or subjects meets the district performance standards.
    (e) For a period of three years after layoff, a teacher is on layoff status and is entitled to a hiring preference in the district where the teacher had been employed. The hiring preference applies only to vacant teaching positions for which the teacher is qualified. If a teacher is offered a teaching position under this subsection and the teacher declines the offer or fails to accept it within 30 days, the teacher is no longer considered to be on layoff status and is no longer entitled to a hiring preference under this section unless the teacher declines the offer because the teacher